# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | * | **CRIMINAL ACTION** |
| | * | |
| **VERSUS** | * | **NO. 11-130** |
| | * | |
| **CYRUS CASBY** | * | **SECTION "L"(3)** |

## ORDER & REASONS

Before the Court are two motions filed by the Defendant Cyrus Casby: (1) Defendant's

Motion to Dismiss Indictment (R. Doc. 34); and (2) Defendant's Motion to Dismiss Indictment

as Duplicitous (R. Doc. 43). The Court has reviewed the parties' briefs and heard from them on

oral argument. After considering these arguments, the applicable law, and relevant facts, the

Court is now ready to rule. For the following reasons, IT IS ORDERED that both of Defendant's

motions to dismiss are DENIED.

## I.    BACKGROUND

This case arises out of alleged arson of an apartment, resulting in death and personal

injuries to the occupants of the apartment. At approximately 4:00 a.m. on November 10, 2004,

Jefferson Parish sheriff's deputies and firefighters were called to a two-story, four-plex at 1005

Tallowtree in Gretna, Louisiana. Inside Apartment C of the building, there was a fire on the

second floor landing. After the firefighters extinguished the fire they found in the upstairs

bedrooms: Cynthia Carto; Ms. Carto's baby Cyanna; Ms. Carto's brother Cleveland McGinnis,

Jr.; Ms. Carto's mother Janis; and Ms. Carto's brother Jarvis. All were deceased except Jarvis.

Ms. Carto had died from multiple stab wounds before the fire started. Mr. McGinnis also had

stab wounds, but non-lethal. Cyanna died from smoke inhalation. Janice had a lethal stab

wound but was still alive when the fire started. Within an hour, the Defendant, father of Cyanna, was arrested in connection with the fire.

The Defendant was indicted by a Jefferson Parish grand jury with four counts of first degree murder and one count of attempted first degree murder. These charges were later reduced to second degree murder and attempted second degree murder. The only issue at trial was the identity of the person who committed the crimes. The jury acquitted the Defendant on all counts on May 31, 2008.

On June 2, 2011, a federal Indictment for Arson of a Building Affecting Interstate Commerce Resulting in Death and Physical Injury was returned against the Defendant. (R. Doc. 1). In the Indictment, the Grand Jury charges that on or about November 10, 2004, in the Eastern District of Louisiana, the Defendant, "maliciously damaged and destroyed and attempted to destroy, by means of fire and explosive materials, the multi-residential building at 1005 Tallowtree Apartment "C" in Harvey, Louisiana," and resulted in the death of "Cyanna Carto (age 10 months) and Cleveland McGinnis, Jr. (age 11 years old)" and personal injuries "to Janice Carto (age 32 years old), Jarvis Carto (age 10 years old), and Fireman Walter Allen," all in violation of Title 18, United States Code, Section 844(i). *See id.* The Indictment also contains a number of Special Findings, supporting the statutory aggravating factors of Title 18, United States Code, Sections 3591, 3592, and 3593. *See id.* Among these Special Findings are charges that the Defendant intentionally killed Carto and McGinnis; in committing the offenses charged, Defendant did so "in an especially heinous, cruel, or depraved manner in that it involved torture or serious physical abuse;" and Defendant committed the offense after substantial planning and pre-meditation to cause death. *See id.* A Notice is attached to the Indictment stating that certain

of the charges in the Indictment carry a maximum penalty of death if the Department of Justice chooses to seek the death penalty. *See* (R. Doc. 1-3).

On June 2, 2011, an Arrest Warrant was issued for the Defendant. (R. Doc. 5). On June 14, 2011, Defendant was arrested in the Eastern District of Texas. An initial appearance before Magistrate Chasez was held on July 14, 2011, during which Defendant was remanded. (R. Doc. 10). Counsel was appointed to represent the Defendant. *See* (R. Docs. 14, 15). On August 1, 2011, Defendant was arraigned before Magistrate Knowles and remanded. (R. Doc. 16).

This Court has convened regular conferences to discuss the status of the case and discovery. *See* (R. Docs. 24, 27, 38, 56). The main topic at these conferences has been the mitigation investigation and the Capital Crimes Unit ("CCU") review and decision regarding whether the Defendant may face capital punishment. *See id.* The CCU is scheduled to hear Defendant's case on April 9, 2012.

In November and December 2011, the Defendant filed the present motions, as well as one other discovery motion. These motions were originally set for hearing on January 5, 2012, but at the hearing the Defendant informed the Court that he wanted new counsel. Accordingly, the Court continued the hearing on the motion. *See* (R. Doc. 54). Thereafter, on January 10, 2012, the Court received correspondence from the Defendant indicating his interest in new counsel. *See* (R. Doc 55)(SEALED). On February 1, 2012, the Court held a special hearing to address Defendant's representation. *See* (R. Doc. 61). After hearing from the parties, the Court ordered that Defendant's current counsel continue to represent the Defendant until Defendant retains private counsel. *See id.* On February 16, 2012, the present motions were set for hearing with oral argument.

## II.   DEFENDANT'S MOTION TO DISMISS INDICTMENT

### A.   Summary of Briefing

#### 1.   *Defendant*

Defendant raises two arguments in support of his Motion to Dismiss: (1) application of the arson statute to the instant facts exceeds Congress' power under the Commerce Clause and intrudes on a right reserved to the States by the Tenth Amendment; and (2) the subsequent federal prosecution of the Defendant, who was previously acquitted of the same acts, offends fundamental principles against double jeopardy.

With regard to the Commerce Clause argument, Defendant argues that the arson to conceal stabbing attack at issue here does not satisfy the jurisdictional hook of the federal arson statute, because the attack is not an activity which substantially affects interstate commerce.

Second, Defendant argues that the subsequent federal prosecution arising from the same incident, after acquittal in state court, undermines the Double Jeopardy clause of the U.S. Constitution.  Defendant claims the elements of the Louisiana felony murder statute are the same as the elements of the federal offense of arson resulting in death.  He highlights the "trenchant criticism from courts and commentators" against different sovereigns bringing successive prosecutions for the same offense, and urges the Court to find the present prosecution constitutes unconstitutional double jeopardy.

#### 2.   *Government*

The Government filed a Response in opposition to the Defendant's Motion.  (R. Doc. 48). The Government first argues that 18 U.S.C. § 844(i) does not exceed the Commerce Clause authority simply because, as Defendant argues, the arson at issue was done to conceal another

crime and not to damage commercial property. Rather, according to the Government, because the arson occurred in a rental property which affects interstate commerce, there exists constitutional authority under the Commerce Clause to federally prosecute the case.

Second, the Government argues that the Double Jeopardy clause is not invoked here, because it does not apply to prosecutions by separate sovereigns, state and federal.

### 3. Defendant's Reply

The Defendant filed a Reply brief, raising further arguments in support of his Motion. (R. Doc. 53). With regard to his Commerce Clause argument, Defendant contends that the Government improperly conflates statutory interpretation with constitutional analysis. Defendant clarifies he is not challenging the statutory interpretation of the arson statute, but rather is raising the constitutional question of "the propriety of aggregation to decide whether an activity substantially affects interstate commerce." Relying upon the eight-judge dissent in *United States v. McFarland*, 311 F.3d 376 (5th Cir. 2002), Defendant argues that arson to cover-up murder does not substantially affect interstate commerce, and thus the present prosecution exceeds the constitutional parameters of the Commerce Clause.

With regard to Defendant's double jeopardy argument, he reiterates that the state and federal charges involve substantially similar elements, and as a result, the subsequent federal charge constitutes unconstitutional double jeopardy.

### B. Law & Analysis

#### 1. Motion to Dismiss

"Under the Sixth Amendment, an indictment must '(1) enumerate each prima facie element of the charged offense; (2) fairly inform the defendant of the charges filed against him;

and (3) provide the defendant with a double jeopardy defense against future prosecutions.'" *United States v. Flemming*, 2011 WL 3568331, at * (E.D. La. Aug. 15, 2011)(quoting *United States v. Guzman-Ocampo*, 236 F.3d 233, 235 (5th Cir. 2000)). Federal Rule of Criminal Procedure 7 requires that an indictment contain "a plain, concise, and definite written statement of the essential facts constituting the offense charged," as well as "[f]or each count,...must give the official or customary citation of the statute, rule, regulation, or other provision of law that the defendant is alleged to have violated."

Federal Rule of Criminal Procedure 12(b)(2), permits a defendant to "raise by pretrial motion any defense, objection, or request that the court can determine without a trial of the general issue." "[A] motion alleging a defect in the indictment or information" must be raised prior to trial, though "at any time while the case is pending, the court must hear a claim that the indictment or information fails to invoke the court's jurisdiction or to state an offense." Fed. R. Crim. P. 12(b)(3)(B). "'There is no summary judgment procedure in criminal cases. Nor do the rules provide for a pretrial determination of sufficiency of the evidence....The sufficiency of a criminal indictment is determined from its face.'" *United States v. Fleming*, 2011 WL 3568331, at *1 (E.D. La. Aug. 15, 2011)(quoting *United States v. Critzer*, 951 F.2d 306 (11th Cir. 1992)). "In evaluating a motion to dismiss an indictment under Rule 12, the Court must treat the allegations in the indictment as true." *United States v. Kozeny*, 493 F.Supp.2d 693, 700 (S.D.N.Y. 2007)(citing *Boyce Motor Lines v. United States*, 342 U.S. 337, 343 n.16 (1952)).

### 2. Commerce Clause

"Every law enacted by Congress must be based on one or more of its powers enumerated in the Constitution. 'The powers of the legislature are defined and limited; and that those limits

may not be mistaken, or forgotten, the constitution is written.'" *United States v. Morrison*, 529 U.S. 598 (2000)(quoting *Marbury v. Madison*, 1 Cranch 137, 176, 2 L.Ed. 60 (1803)(Marshall, C. J.)). Article I, Section 8, Clause 3 of the Constitution, the Commerce Clause, delegates to Congress the power to "[t]o regulate Commerce with foreign Nations, and among the several States, and with the Indian Tribes."

"[T]he interpretation of the Commerce Clause has changed as our nation has developed." *Morrison*, 529 U.S. at 608. However, "even under our modern, expansive interpretation of the Commerce Clause, Congress' regulatory authority is not without effective bounds" and "is subject to outer limits." *Id.* "[T]he scope of the interstate commerce power 'must be considered in the light of our dual system of government and may not be extended so as to embrace effects upon interstate commerce so indirect and remote that to embrace them, in view of our complex society, would effectually obliterate the distinction between what is national and what is local and create a completely centralized government." *Id.*

The Supreme Court has "identified three broad categories of activity that Congress may regulate under its commerce power." *United States v. Lopez*, 514 U.S. 549, 558 (1995). These are: (1) "the use of the channels of interstate commerce," (2) "the instrumentalities of interstate commerce, or persons or things in interstate commerce, even though the threat may come only from intrastate activities," and (3) "those activities having a substantial relation to interstate commerce." *Id.* (internal citations omitted). Only the third is involved in the present matter. With regard to the third category of activity that Congress may regulate pursuant to the Commerce Clause, the Supreme Court has stated, "that the proper test requires an analysis of whether the regulated activity 'substantially affects' interstate commerce." *Id.* at 559. However,

a court "need not determine whether [the subject] activities, taken in the aggregate, substantially affect interstate commerce in fact, but only whether a 'rational basis' exists for so concluding." *Gonzalez v. Raich*, 545 U.S. 1, 22 (2005).

The Supreme Court has addressed this third category of Commerce Clause authority on a number of occasions. A review of this jurisprudence will put the present issue in perspective. In *United States v. Lopez*, 514 U.S. 549 (1995), the Supreme Court held that the Gun-Free School Zones Act, making it a federal offense for any individual to knowingly possess a firearm at a place that the individual knows or has reasonable cause to believe is a school zone, exceeded Congress' Commerce Clause authority, since possession of a firearm in a school zone is not an economic activity which substantially affects interstate commerce. In reaching its decision, the Court first noted the Act "is a criminal statute that by its terms has nothing to do with 'commerce' or any sort of economic enterprise...[and it] is not an essential part of a larger regulation of economic activity." *Id*. at 561. Second, the Court noted that the Act "contains no jurisdictional element which would ensure, through case-by-case inquiry, that the firearm possession in question affects interstate commerce." *Id*. The Court reviewed the legislative findings of the Act, but found none to support the Act's relationship with interstate commerce. *Id.* at 562-63.

The Court next addressed the third category of activity which may be regulated under the Commerce Clause in *United States v. Morrison*, 529 U.S. 598 (2000), holding that the Clause did not provide Congress with authority to enact the Violence Against Women Act, because the Act did not regulate activity that substantially affected interstate commerce. Looking to *Lopez*, the Court reasoned that the gender-motivated crimes of violence made unlawful by the Act "are not, in any sense of the phrase, economic activity." *Id*. at 613. The Court also noted that similar to

-8-

*Lopez*, the subject Act "contains no jurisdictional element establishing that the federal cause of action is in pursuance of Congress' power to regulate interstate commerce." *Id*. The Court acknowledged Congressional findings that the Act affected interstate commerce, but held these findings were insufficient to demonstrate the Act was a proper exercise of the Commerce Clause. *Id*. at 614.

In 2005, the Supreme Court reaffirmed the validity of *Lopez* and *Morrison* in *Gonzales v. Raich*, 545 U.S. 1 (2005). In *Gonzalez*, the Court held that the application of the Controlled Substances Act provisions criminalizing the manufacture, distribution, or possession of marijuana to intrastate growers and users of marijuana for medical purposes did not violate the Commerce Clause. *Id*. Therein, the Court reasoned that production of a commodity meant for home consumption, such as marijuana, "has a substantial effect on supply and demand in the national market for that commodity." *Id*. at 19.

In the present matter, the Indictment charges that the Defendant "maliciously damaged and destroyed and attempted to damage and destroy, by means of fire and explosive materials, the multi-residential building at 1005 Tallowtree, Apartment "C" in Harvey, Louisiana, which was real property used in interest commerce," and that such caused death and personal injuries. (R. Doc. 1). The federal criminal statute under which the Defendant has been charged is 18 U.S.C. § 844(i), which provides,

> Whoever maliciously damages or destroys, or attempts to damage or destroy, by means of fire or an explosive, any building, vehicle, or other real or personal property used in interstate or foreign commerce or in any activity affecting interstate or foreign commerce shall be imprisoned for not less than 5 years and not more than 20 years, fined under this title, or both; and if personal injury results to any person, including any public safety officer performing duties as a direct or proximate result of conduct prohibited by this subsection, shall be imprisoned for not less than 7 years and not more than 40 years, fined under this title, or both; and if death results to any person, including any public

safety officer performing duties as a direct or proximate result of conduct prohibited by this subsection, shall also be subject to imprisonment for any term of years, or to the death penalty or to life imprisonment.

The Fifth Circuit has characterized the elements of § 844(i) as requiring the Government to "prove beyond a reasonable doubt that [the Defendant]: (1) maliciously damaged or destroyed a building or personal property, (2) by means of fire, and (3) the building or personal property was being used in activity affecting interstate commerce." *United States v. Pazos*, 24 F.3d 660, 664 (5th Cir. 1994)(citing *United States v. Triplett*, 922 F.2d 174, 1177 (5th Cir. 1991)). Thus, facially, the Indictment properly charges Defendant under § 844(i). The Court will next examine the jurisprudence on § 844(i) and the Commerce Clause as relevant to Defendant's arguments.

The Supreme Court has addressed 18 U.S.C. § 844(i) in the context of the Commerce Clause on two occasions. In *Russell v. United States*, 471 U.S. 858, 858-59 (1985), the Court was presented with the question of whether this statute "applies to a two-unit apartment building that is used as rental property" and found in the affirmative. In *Russell*, the defendant was the owner of an apartment building which provided him with rental income and which he treated as a business property for tax purposes. *Id*. at 859. Defendant unsuccessfully attempted to set fire to this building and was indicted under 18 U.S.C. § 844(i). *Id*. The Court, in concluding the charges were proper under the statute, reasoned "[t]he reference to 'any building...used...in any activity affecting interstate or foreign commerce' expresses an intent by Congress to exercise its full power under the Commerce Clause." *Id*. The Court also noted that "[t]he legislative history indicates that Congress intended to exercise its full power to protect 'business property.'" *Id*. at 860. The Court reasoned,

By its terms, however, the statute only applies to property that is 'used' in an 'activity' that affects commerce. The rental of real estate is unquestionably such an activity. We need

-10-

not rely on the connection between the market for residential units and 'the interstate movement of people,' to recognize that the local rental of an apartment unit is merely an element of a much broader commercial market in rental properties. The congressional power to regulate the class of activities that constitute the rental market for real estate includes the power to regulate individual activity within that class. *Id*. 862.

In conclusion, the Court held that the defendant "was renting his apartment building to tenants at the time he attempted to destroy it by fire. The property was therefore being used in an activity affecting commerce within the meaning of § 844(i)." *Id*.

The Supreme Court next addressed 18 U.S.C. § 844(i) and the Commerce Clause in *Jones v. United States*, 529 U.S. 848 (2000). Therein, the defendant tossed a Molotov cocktail into his cousin's family home and was convicted for violating § 844(i). *Id*. The question presented to the Court was "whether arson of an owner-occupied private residence falls within § 844(i)'s compass," to which the Court found in the negative. *Id*. at 850. The Court held, distinguishing *Russell*, "that an owner-occupied resident not used for any commercial purpose does not qualify as property 'used in commerce or commerce-affecting activity; arson of such a dwelling, therefore, is not subject to federal prosecution under § 844(i)." *Id*. at 850-51. The Court framed the inquiry as "'into the function of the building itself, and then a determination of whether that function affects interstate commerce.'" *Id*. at 854-55 (quoting *United States v. Ryan*, 9 F.3d 660, 675 (8th Cir. 1993)(Arnold, C. J., concurring in part and dissenting in part)).

In the present matter, there is no dispute that the property subject to arson was a single apartment within a commercial apartment complex, all of which constituted rental property. Thus, under the guidance of the Supreme Court in *Russell* and *Jones*, the Court finds that the Indictment charging Defendant with violation of § 844(i) and arising from arson to this rental

property is properly within the scope of the Commerce Clause. As noted above, Defendant raises several arguments against this conclusion which the Court will now address in turn.

First, Defendant argues that his charge is outside the scope of the Commerce Clause because the arson at issue was done to conceal a stabbing attack, an entirely non-economic activity, as contrasted with, for example, arson causing property damage which is involved with economic activity. However, the plain language of § 844(i) does not require that the intent of the arson be to destroy commercial property, only that this be the type of property damaged by the arson; nor does the Fifth Circuit's interpretation of § 844(i) require such an intent. *See Pazos*, 24 F.3d at 664.

Defendant, however, asks the Court to look beyond the face of the Indictment and find that because arson to conceal murder does not substantially affect interstate commerce, the present case, like *Lopez* and *Morrison*, falls outside the parameters of the Commerce Clause. Turning to *Lopez* and *Morrison*, even if the Court finds that the arson itself is an entirely non-economic activity such as the offenses involved in these cases, there exists support for Commerce Clause authority to charge Defendant under § 844(i). In both *Lopez* and *Morrison*, the Supreme Court reached its decision in large part on the basis that the subject statutes lacked "jurisdictional hooks" to bring them within the scope of the Commerce Clause. *See Lopez*, 514 U.S. at 561; *Morrison*, 529 U.S. at 613. Here, in contrast, § 844(i) does contain a jurisdictional hook, namely the requirement that the property subject to the arson be "used in interstate or foreign commerce or in any activity affecting interstate or foreign commerce." 28 U.S.C. § 844(i). Thus, again the focus of the inquiry is the object of the arson, not the motive behind it. For example, in *Jones*, although the Court ultimately found that the charges were outside the

scope of the Commerce Clause, the Court's inquiry was not whether the arson, which was the throwing of a Molotov cocktail into a family member's home, had an economic basis, but rather whether the property at issue did. *See* 529 U.S. 848. *Jones* is more factually similar to the present matter than *Russell* in that it did not involve arson to collect insurance proceeds, but rather arson to harm property and/or persons. *See id.*

Defendant also claims that the legislative history of § 844(i) supports his argument. With regard to Defendant's legislative history argument, the Supreme Court has already spoken on this issue in *Russell*. Therein, the Court stated, "[t]he legislative history indicates that Congress intended to exercise its full power to protect 'business property.'...[T]he final Report on the bill emphasized the 'very broad' coverage of 'substantially all business property.'...In sum, the legislative history suggests that Congress at least intended to protect all business property." *Russell*, 471 U.S. at 860-61.

In the Defendant's Reply brief, he argues that aggregation of the effects of arson to conceal murder does not substantially affect interstate commerce, and thus the Defendant's charge is outside of the Commerce Clause authority. Defendant largely relies upon the dissenting opinion in *United States v. McFarland*, 311 F.3d 376 (5th Cir. 2002), to support this argument. In *McFarland*, on appeal the defendant argued his conviction under 18 U.S.C. § 1951, known as the Hobbs Act, violated the Commerce Clause on both statutory and constitutional grounds. *See id.* A *per curiam* panel affirmed the defendant's conviction of four counts of robbery, and thereafter the conviction was again affirmed by reason of an equally divided en banc court. *See* 311 F.3d at 377. However, the dissent concluded that,

> [T]he Hobbs Act's here relevant proscription of *any* robbery that 'in any way or degree...affects commerce' does not constitute a regulation of commercial activity,

-13-

notwithstanding that all robberies have *some* economic effect, and hence is within the scope of *Lopez* and *Morrison*. We further conclude that the instant robberies fall within *Lopez* category three, and for that reason they are within the Commerce Clause power only if they 'substantially' affect interstate commerce. Individually considered, it is clear that none of them do. Nor is there any rational basis to for that purpose aggregate their respective effects on interstate commerce with the effect on interstate commerce of all the undifferentiated mass of robberies covered by the Hobbs Act's here relevant general proscription of any and all robberies which 'in any way or degree...affect commerce.' To allow such aggregation in *Lopez* category three cases would, without adequate justification, bring within the scope of the Commerce Clause the proscription of local violent (and other) crimes not constituting the regulation of commercial activity, crimes prototypical of those that historically have been within the reserved police power of the states, contrary to the principle that the Commerce Clause is limited to matters that are truly national rather than truly local. *McFarland*, 311 F.3d at 409-10.

The Defendant argues this same conclusion applies to the present matter; that is, arson of a commercial property to cover-up murder does not substantially affect interstate commerce, nor does the aggregation thereof.

Aside from the fact that the Defendant entirely relies upon the dissenting opinion in *McFarland* for his argument, his argument is unavailing because the dissent relies upon *Jones*, 529 U.S. 848 (2000), which as discussed above, "read the words 'used in' in section 844(i) as modifying 'any activity affecting interstate commerce,' so that 'an owner-occupied residence not used for any commercial purpose does not qualify as property 'used in' commerce or commerce-affecting activity' within the meaning of section 844(i)." The *McFarland* dissent noted, discussing *Jones*,

[T]he Hobbs Act contains no comparable special language [to § 844(i)] upon which an analogous limiting construction can be focused. It does not at all differentiate between robberies which 'in any way or degree obstruct, delay, or affect commerce or the movement of any article or commodity in commerce.' Thus, driven by the above noted language..., we conclude that to determine whether the Hobbs Act applies to these offenses we must examine the limits of the commerce power as articulated by the Supreme Court in *Lopez* and *Morrison*." *Id*. at 389.

Thus, looking to the dissent upon which Defendant relies, the Court need not go beyond its

analysis of whether the property subject to arson was used in any activity affecting interstate commerce, because the "special language" of § 844(i) requires that the charged arson substantially affect interstate commerce.

Additionally, while the *McFarland* dissent rejects that a jurisdictional element in a federal statute can *per se* place that statute within Commerce Clause authority, it recognizes that several other circuits have reached the opposite conclusion. *Id.* at 394. Section 844(i) is distinguishable from the Hobbs Act which the dissent characterizes as failing "to target any class of product, process, or market, or indeed even commercial victims. It facially applies to any robbery, or its attempt, of any person or entity," *Id.* at 400, because Section 844(i) does target commercial properties and does not facially apply to *any* arson, as exemplified by *Jones*. *See* 529 U.S. at 850-51.

### 3. *Double Jeopardy*

The Fifth Amendment of the United States Constitution provides that "nor shall any person be subject for the same offense to be twice put in jeopardy of life or limb." U.S. Const. amend. V. "The constitutional prohibition against 'double jeopardy' was designed to protect an individual from being subjected to the hazards of trial and possibly conviction more than once for an alleged offense." *Green v. United States*, 355 U.S. 184, 187 (1957). "Successive prosecutions are barred by the Fifth Amendment only if the two offenses for which the defendant is prosecuted are the 'same' for double jeopardy purposes." *Heath v. Alabama*, 474 U.S. 82, 87 (1985).

However, "successive state and federal prosecutions are not in violation of the Fifth Amendment," *Bartkus v. People of the State of Ill.*, 359 U.S. 121, 132 (1958), as "'[e]very citizen

of the United States is also a citizen of a State or territory. He may be said to owe allegiance to two sovereigns, and may be liable to punishment for an infraction of the laws of either. The same act may be an offence or transgression of the laws of both.'" *Id.* at 131 (quoting *Moore v. People of State of Ill.*, 55 U.S. 13 (1852)). The Supreme Court contemporaneously affirmed this concept in *Heath v. Alabama*, 474 U.S. 82, 87-89 (1985).

Here, Defendant was acquitted in state court of a charge of Second Degree Murder. *See* La. Rev. Stat. 14:30.1; 14:51. After this acquittal, the Defendant was indicted for the federal charge of violation of 18 U.S.C. § 844(i). Because these are prosecutions by separate sovereigns, although arising from the same alleged acts, the later federal prosecution is not barred by double jeopardy.

The Defendant asks the Court to consider the Supreme Court's *Blockburger* test which prohibits successive prosecutions if the offenses are the same or one is included in the other. However, and Defendant concedes insomuch, the *Blockburger* test was applied to multiple offenses charged by the same sovereign. *See Blockburger v. United States*, 284 U.S. 299 (1932). Thus, the rationale in *Blockburger* does not apply to the present matter.

The Defendant also asks this Court to look to the dissenting opinions of the Supreme Court and the writings of legal critics, as well as suggestions by the Second and Third Circuits, to rule that the Defendant's federal prosecution violates the Double Jeopardy Clause of the Constitution. In doing so, the Defendant acknowledges that the law is not is his favor on the issue. The Court finds no basis to contravene well-established precedent to find the present matter constitutes unconstitutional double jeopardy.

## III.     DEFENDANT'S MOTION TO DISMISS INDICTMENT AS DUPLICITOUS

## A.    Summary of Briefing

### 1.    *Defendant's Motion*

Defendant filed a Motion to Dismiss Indictment as Duplicitous (R. Doc. 43), seeking dismissal of the Indictment on the basis that the Government improperly included two offenses in a single count, specifically arson with resulting death and arson with resulting personal injuries.  Defendant notes that these crimes carry different statutory mandatory maximums, and argues this renders each a separate offense which must be charged in separate counts.

### 2.    *Government's Response*

The Government filed a Response in opposition to Defendant's Motion.  (R. Doc. 43).  The Government argues that the Indictment is not duplicitous because the single count therein, although it contains two separate statutory maximum penalties as a result of the injury or death of the victims, it constitutes a single offense of arson.  According to the Government, the determination of the applicable sentencing range can be remedied by use of jury interrogatories setting forth the cause of death or injury for each victim.

## B.    Law & Analysis

Federal Rule of Criminal Procedure 8(a) provides that an indictment "may charge a defendant in separate counts with [two] or more offenses if the offenses charged-whether felonies or misdemeanors or both-are of the same or similar character, or are based on the same act or transaction, or are connected with or constitute parts of a common scheme or plan."  However, "[a]n indictment may be duplicitous if it joins in a single count two or more distinct offenses."  *United States v. Baytank (Houston), Inc.*, 934 F.2d 599, 608 (5th Cir. 1991)(citing *United States v. Robin*, 693 F.2d 376, 378 (5th Cir. 1982)).  "If an indictment is duplicitous and

-17-

prejudice results, the conviction may be subject to reversal." *Id*.  The Fifth Circuit considers the following factors in determining whether a count is duplicitous: (1) whether the count notifies the defendant adequately of the charges against him, (2) whether the count subjects defendant to double jeopardy, (3) whether the count would permit prejudicial evidentiary rulings at trial, and (4) whether the count allows the defendant to be convicted by a nonunaminous jury verdict.  *Id*. at 609.

> Here, Defendant was charged in Count One as follows:

> On or about November 10, 2004, in the Eastern District of Louisiana, the defendant, Cyrus Casby, maliciously damaged and attempted to damage and destroy, by means of fire and explosive materials, the multi-residential building at 1005 Tallowtree, Apartment "C" in Harvey, Louisiana, which was real property used in interstate commerce, and as a direct and proximate result of the prohibited conduct death resulted to Cyanna Carto (age 19 months) and Cleveland McGinnis, Jr. (age 11 years old), and personal injury resulted to Janice Carto (age 32 years old), Jarvis Carto (age 10 years old), and Fireman Walter Allen, who was a public safety officer performing his duties; all in violation of Title 18, United States Code, Section 844(i).  (R. Doc. 1).

Defendant argues that because he is charged in Count One for both arson resulting in death and arson resulting in personal injuries, each of which carries different statutory penalties, Count One is improperly duplicitous.  Indeed, 18 U.S.C. § 844(i) carries a maximum sentence of 40 years for arson resulting in personal injuries and a maximum sentence of either the death penalty or life imprisonment for arson resulting in death.  Thus, the Court must determine whether Count One improperly includes two separate offenses due to the differing statutory penalties, and if it finds in the affirmative, whether the inclusions of these two offenses in a single count causes the Defendant prejudice.  *See Baytank*, 934 F.2d at 608.

> Defendant's argument is that because a finding of arson causing death increases the penalty for the crime, this aggravating factor is an element of the offense and must be charged

separately from arson causing personal injuries. The Court agrees with Defendant that whether personal injuries or death results from arson are each elements of the arson charge which must be determined by a jury. *See Ring v. Arizona*, 536 U.S. 584 (2002); *Logan v. United States*, 434 F.3d 503 (6th Cir. 2008). However, Defendant fails to argue that bringing the arson charges in a single count will cause him prejudice. Nor does Defendant address any of the factors considered by the Fifth Circuit in determining prejudice caused by duplicitous charges.

As recognized by the Fifth Circuit and noted by the Government, one concern that may be raised by Count One is presenting the Count to the jury. Duplicity "is problematic because it might lead the jury to convict without unanimous agreement on the defendant's guilt with respect to a particular offense." *United States v. Pietrantonio*, 637 F.3d 865, 869 (8th Cir. 2011); *accord United States v. Anderson*, 605 F.3d 404, 414 (6th Cir. 2010)("The overall vice of duplicity is that the jury cannot in a general verdict render its finding on each offense, making it difficult to determine whether a conviction rests on only one of the offenses or both."). However, duplicity can be cured by a limiting instruction to the jury. *See id.; Baytank*, 934 F.2d at 609 (finding special jury instructions can cure any prejudice posed by duplicitous indictment). Thus, by utilizing proper jury instructions and interrogatories, any possible prejudice posed by the charge in Count One can be cured.

## IV.     CONCLUSION

For the foregoing reasons, IT IS ORDERED that Defendant's Motion to Dismiss Indictment (R. Doc. 34); and Defendant's Motion to Dismiss Indictment as Duplicitous (R. Doc. 43) are DENIED.

New Orleans, Louisiana this 16th day of March 2012.

_____
U.S. District Judge