UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| UNITED STATES OF AMERICA | CRIMINAL ACTION |
|---|---|
| VERSUS | NO. 11-0130 |
| CYRUS CASBY | SECTION "L" (2) |

## ORDER AND REASONS

Before the Court are Defendant Cyrus Casby's Motion to Vacate under 28 U.S.C. 2255 (R. Doc. 388) and Motion for Evidentiary Hearing (R. Doc. 394). The Government opposes (R. Doc. 396), and Cyrus Casby filed a reply (R. Doc. 397). Having considered the parties' briefs, the record, and the applicable law, the Court now issues this Order and Reasons.

### I.    BACKGROUND

Jefferson Parish Sheriff's Deputies responded to a fire in Apartment C of a two-story four-plex at 1005 Tallowtree Lane in Harvey, Louisiana in the early morning of November 10, 2014. The bodies of Cynthia Carto, her 19-month-old daughter Cyanna Carto, Janice Carto, and Cleveland McGinnis, Jr. were found inside. Cynthia died from multiple stab wounds before the fire started. Janice and Cleveland also had stab wounds but were alive when the fire began. They, along with Cyanna, died as a result of the fire. Jarvis Carto survived the fire but sustained significant brain damage.

Defendant Cyrus Casby ("Casby") was taken to the Jefferson Parish Sheriff's Office within an hour. Casby waived his *Miranda* rights and gave three statements to detectives. In the first two, Casby denied setting the fire but admitted that he was in the apartment a few hours before the fire and had an altercation with unknown males who tried to steal his car radio. In the third, Casby admitted to fighting with and stabbing the Carto family in self-defense and burning his leg as he

1

fled the apartment. Casby was prosecuted for four counts of second degree murder in the 24th Judicial District Court for the Parish of Jefferson. On May 31, 2008, the jury acquitted him of all counts.

On June 2, 2011, a federal grand jury indicted Casby for arson that resulted in the deaths of Cyanna and Cleveland and the injuries of Janice, Jarvis, and Fireman Walter Allen, in violation of Title 18, United States Code, Section 844(i). This Court made numerous accommodations in its appointment of counsel throughout this case. First, two attorneys were appointed for the then-capital proceedings: Valerie Welz Jusselin and Kerry P. Cuccia. After motions were filed and hearings were held, the Court granted Casby's request to replace them with two CJA-appointed counsel. When the Government indicated it would not seek the death penalty, the Court appointed Robin Ljungberg in place of the two prior CJA counsel. Mr. Ljungberg was appointed at the recommendation of the Federal Public Defender, and he represented Casby at trial.

Casby was convicted after a five-day trial. He then fired Mr. Ljungberg, and the Court appointed Michael Riehlmann. Ultimately, Casby fired Mr. Riehlmann and retained his seventh attorney in this case, Jerome Matthews.

After Casby was sentenced to life imprisonment and a notice of appeal was filed, Mr. Matthews was permitted to withdraw. Casby filed a motion to proceed pro se in his criminal appeal, and the Fifth Circuit allowed Julie Tizzard, counsel hired by Casby's family, to withdraw. The Fifth Circuit gave Casby three opportunities to pursue his appeal before finally dismissing his appeal for want of prosecution on December 2, 2016. R. Docs. 343, 344, 355, 373, 384, 385. The United States Supreme Court denied Casby's petition for writ of certiorari. R. Doc. 386.

## II. PRESENT MOTION

Casby, proceeding pro se, moves the Court to vacate, set aside, or correct his sentence under 28 U.S.C. § 2255. R. Doc. 388. He divides his motion into twelve separate claims: (1) DNA contamination/spoliation; (2) failure to prove the elements of the indictment; (3) double jeopardy; (4) district court's denial of motion to suppress statements; (5) district court's evidentiary rulings under Rule 403; (6) pro se denial during trial; (7) discovery/Brady issues; (8) failure to receive medication while awaiting trial; (9) representation affected by trial counsel's alcohol addiction; (10) false testimony; (11) attorney's failure to secure evidence; and (12) ineffective cross examination. Casby alleges ineffective assistance of counsel throughout these twelve grounds. Furthermore, Casby requests an evidentiary hearing with respect to grounds one and eight, and asks the Court to hold ground three (double jeopardy) in abeyance pending the Supreme Court's ruling in *Gamble v. United States*.

In opposition, the Government argues that Casby fails to establish ineffective assistance of counsel, and that he has not demonstrated the cause and actual prejudice necessary to pursue matters more appropriate for appellate review through a 2255 motion. R. Doc. 396.

### III. APPLICABLE LAW

Under 28 U.S.C. § 2255, a prisoner may move the convicting court to vacate, set aside, or correct his conviction or sentence. Section 2255 provides four grounds: (1) the sentence was imposed in violation of the Constitution or laws of the United States; (2) the court was without jurisdiction to impose the sentence; (3) the sentence exceeds the statutory maximum sentence; or (4) the sentence is otherwise subject to collateral attack. Upon a finding that any of the four grounds for relief exist, the court "shall vacate and set the judgment aside and shall discharge the prisoner or resentence him or grant a new trial or correct the sentence as may appear appropriate." 28 U.S.C. § 2255(b).

"It has, of course, long been settled that an error that may justify reversal on direct appeal will not necessarily support a collateral attack on a final judgment." *United States v. Addonizio*, 442 U.S. 178, 184 (1979). "Section 2255 does not offer recourse to all who suffer trial errors." *United States v. Capua*, 656 F.2d 1033, 1037 (5th Cir. Unit A 1981). Relief under § 2255 is "reserved for transgressions of constitutional rights and for a narrow range of injuries that could not have been raised on direct appeal and would, if condoned, result in a complete miscarriage of justice." *United States v. Acklen*, 47 F.3d 739, 741 (5th Cir. 1995).

When a defendant's chance to appeal has been waived or exhausted, federal courts are "entitled to presume he stands fairly and finally convicted[.]" *United States v. Frady*, 456 U.S. 152, 164 (1982). Because a § 2255 motion is not a substitute for a direct appeal, a defendant "may not raise an issue [constitutional or jurisdictional in nature] for the first time on collateral review without showing both 'cause' for his procedural default and 'actual prejudice' resulting from the error." *United States v. Shaid*, 937 F.2d 228, 232 (5th Cir. 1991). "If the error is not of constitutional or jurisdictional magnitude, the defendant must show the error would result in a complete miscarriage of justice." *United States v. Segler*, 37 F.3d 1131, 1133 (5th Cir. 1994).

## IV. DISCUSSION

### 1. Ineffective Assistance of Counsel

Casby's motion is divided into twelve separate grounds, with claims of ineffective assistance of counsel alleged throughout. "[A] claim of ineffective assistance of counsel is properly made in a § 2255 motion because it raises an issue of constitutional magnitude and, as a general rule, cannot be resolved on direct appeal." *United States v. Bass*, 310 F.3d 321, 325 (5th Cir. 2002).

4

To succeed on this claim, Casby must show that (1) counsel's performance was constitutionally deficient and (2) prejudice as a result of the deficiency. *Strickland v. Washington*, 466 U.S. 668, 687 (1984).

Counsel's performance was deficient only if it "fell below an objective standard of reasonableness." *Id.* at 688. For the purposes of a § 2255 motion, scrutiny of counsel's performance "must be highly deferential" and a fair assessment "requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." *Id.* at 689. Indeed, courts "indulge a strong presumption that counsel's conduct falls within the wide range of professional assistance," and a defendant "must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy." *Id.* "A conscious and informed decision on trial tactics and strategy cannot be the basis for constitutionally ineffective assistance of counsel unless it is so ill chosen that it permeates the entire trial with obvious unfairness." *Martinez v. Dretke*, 404 F.3d 878, 885 (5th Cir. 2005) (quoting *United States v. Jones*, 287 F.3d 325, 331 (5th Cir. 2002)).

As to prejudice, a defendant must show "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. "It is not enough for the defendant to show that the errors had some conceivable effect on the outcome of the proceeding." *Id.* at 693.

Casby argues that his trial counsel was an alcoholic and his subsequent attorney's failure to investigate his trial counsel's alcohol use amounted to ineffective assistance of counsel. Casby's trial attorney was conditionally admitted to practice law in Louisiana in 2012, subject to a five-year recovery agreement due to a 2006 DUI conviction. On May 5th, 2014, nine months after

5

Casby's trial, his trial attorney tested positive for alcohol and the Louisiana Supreme Court revoked his conditional admission. This Court held a hearing to specifically address whether trial counsel consumed alcohol during Casby's trial. R. Docs. 303, 345. During that hearing, the trial attorney denied drinking while representing Casby and stated that he was tested twice just before and during Casby's trial, and passed. R. Doc. 345 at 17. The Court carefully considered the matter and allowed Casby's case to proceed to sentencing.

Casby further argues that his trial counsel should have presented various experts in DNA, arson, false confession, serology, and blood spatter. He contends that his attorney should have pursued a different strategy and that he was ineffective in failing to highlight inconsistencies between certain witnesses' trial testimony and prior testimony and failing to effectively cross examine certain witnesses.

Casby's hindsight examination of trial counsel's strategic decisions is precluded by *Strickland*. "The Fifth Circuit has explained that the method and scope of cross examination is a type of trial strategy, even when counsel's questions on cross examination elicit unfavorable or otherwise inadmissible information." *United States v. Octave*, 2015 WL 6620117, at *6 (E.D. La. Oct. 30, 2015) (citing *Pape v. Thaler*, 645 F.3d 281, 291) (5th Cir. 2011)). "Although one may want to question some of the tactical decisions made by counsel, [the Court] may not, in hindsight, second-guess counsel's strategy regarding [the witness's] testimony merely because an alternative course of action existed during trial." *Id.*

With respect to his double jeopardy claim, Casby argues that his counsel was ineffective in "failing to expose that congress' interpretation of Amendment 5 and 18 USC 1738 has been hijacked and suppressed by the dual sovereignty doctrine." R. Doc. 397 at 5. Casby's attorneys

6

raised this issue pre-trial (R. Doc. 34) and, in light of "well-established precedent," the Court rejected it. R. Doc. 66.

Casby has not established that any of his numerous attorneys were constitutionally deficient, or that he suffered actual prejudice as a result. In fact, this Court recognized Casby's various counsel's vigorous representation several times. *See, e.g.*, R. Doc. 340 at 12 ("Because it was a death eligible case, I appointed two counsel to represent him. They vigorously represented him, but he fired the two counsel, asked me to appoint two more counsel. I appointed two more counsel for him."); R. Doc. 345 at 7 ("I looked over the material that Mr. Riehlmann had filed. I was satisfied with his work, with his exceptional work, exceptional diligence."); R. Doc. 345 at 8 ("I would have to say that Mr. Riehlmann, since his appointment, has vigorously represented Mr. Casby.").

On this record, the Court concludes that Casby cannot establish an ineffective assistance of counsel claim. Neither discovery nor an evidentiary hearing is necessary. *United States v. Walker*, 68 F.3d 931, 934 (5th Cir. 1995).

**2. Remaining Claims**

In his two-hundred-page motion, Casby largely seeks to pursue the appeal he forfeited. Casby noticed his appeal on December 21, 2014. It was dismissed for want of prosecution on November 23, 2015 and reopened on Casby's motion on March 25, 2016. On September 6, 2016, Casby filed a brief that was deemed insufficient by the Fifth Circuit. He was given multiple extensions to remedy the insufficiencies, with a deadline of November 1, 2016. On October 17, 2016, the Fifth Circuit received a brief that was deemed sufficient. On October 28, 2016, however, Casby informed the court that the sufficient brief had been filed by someone else without his consent or knowledge. Because Casby asserted that he did not file the brief that was accepted by

the Fifth Circuit and failed to remedy the numerous deficiencies from his original filing, his appeal was again dismissed for want of prosecution.

Indeed, Casby's appeal was dismissed for want of prosecution after he twice failed to comply with orders from the Fifth Circuit. R. Docs 343-44, 384-85. He is thus did not argue the grounds he now asserts and, unless he can establish cause for the procedural default and actual prejudice from any error, he cannot raise them for the first time on collateral review.

The "cause" standard requires Casby to show that "some objective factor external to the defense" prevented him from raising these claims on direct appeal. *Romero v. Collins*, 961 F.2d 1181, 1183 (5th Cir. 1992). "Objective factors that constitute cause include interference by officials that makes compliance with the procedural rule impracticable, a showing that the factual or legal basis for the claim was not reasonably available to counsel at the prior occasion, and ineffective assistance of counsel in the constitutional sense." *United States v. Guerra*, 94 F.3d 989, 993 (5th Cir. 1996). To show actual prejudice, Casby must demonstrate "not just the possibility of prejudice, 'but an actual and substantial disadvantage, infecting his entire [proceedings] with error of constitutional dimension.'" *United States v. Rodney*, No. 10-102, 2014 WL 6607069, at *3 (E.D. La. Nov. 18, 2014) (quoting *Shaid*, 937 F.2d at 233).

Casby argues that he has demonstrated cause for his procedural default, because "Yazoo USP acted as an 'external impediment' which interfered with [his] access to the courts." R. Doc. 397 at 11. He claims he was unable to make the required amount of copies of his brief by the deadline due to "internal prison failures." Casby avers that on October 28, 2016, he was informed that the Yazoo prison staff would not make the required amount of copies for him, and that he must purchase copy cards and make the copies himself, one by one. According to Casby, this was an impossible task to complete by the November 1, 2016 deadline.

8

Even assuming Casby can establish cause for his procedural default, he has not demonstrated a constitutional defect that led to an actual or substantial disadvantage during his trial or sentencing. *See Shaid*, 937 F.2d at 233. All of the arguments he makes were available to – and often asserted by – Casby before this Court. There is nothing to suggest that he would have been acquitted or received a shorter sentence.

In his first claim, Casby argues that the DNA evidence in his case should not have been introduced because it was processed by an unqualified or malicious DNA analyst. This Court recognized Ms. Dubourg to be an expert and that the Government laid a proper foundation for the introduction of the evidence. R. Doc. 249 at 80 et seq. In his second claim, he argues that the evidence was insufficient to convict him. Casby's trial counsel made a Rule 29 motion at the conclusion of the Government's case, which was denied. R. Doc. 189. Casby's third claim will be discussed in a later section of this Order. In his fourth claim, Casby seeks to revisit the motions to suppress statements litigated prior to trial. Both were denied. R. Docs. 66, 152. In his fifth claim, Casby asks the Court to revisit its evidentiary rulings relative to the admission of autopsy photographs. As the Court recognized during trial, these photos were relevant to the elements of arson and death. R. Doc. 248 at 139 et seq. A § 2255 motion is not a substitute for an appeal.

In his sixth claim, Casby argues that he was denied the right to represent himself during trial. In the middle of the third day of trial, Casby interjected and sought to dismiss his fifth attorney in this case – but at no point did he state that he wished to represent himself. R. Doc. 249 at 58. Casby's request to dismiss his fifth-appointed attorney just prior to the conclusion of the Government's case was "not only disruptive," but "an abuse of the system" and was denied. *Id.* Casby was frequently dissatisfied with his multiple attorneys, but he never sought self-representation. *Moreno v. Estelle*, 717 F.2d 171, 175 (5th Cir. 1983) ("We cannot infer from the

9

defendant's general request to the court to dismiss his attorney that he desired to waive counsel and continue the trial pro se."); *United States v. Cano*, 519 F.3d 512, 516 (5th Cir. 2008) (A defendant "must unequivocally inform the court of the desire to represent himself."); *Burton v. Collins*, 937 F.2d 131, 133 (5th Cir. 1991) (A defendant's "demand to defend *pro se* must be stated unequivocally because defending *pro se* (1) may jeopardize defendant's chance of receiving an effective defense and (2) prevents defendant from arguing denial of effective assistance of counsel on appeal.") (citing *Chapman v. United States*, 553 F.2d 886, 892-93 (5th Cir. 1977)).

In his seventh claim, Casby argues that the Government failed to disclose various pieces of evidence such as phone records, knives, and photos, many of which he had access to for trial. In his eighth claim, Casby claims that he did not receive medication during his trial, which affected his ability to recall details for his defense and causes him to be unable to distinguish between dreams and reality. He makes this claim despite his own voluminous pro se filings throughout his case. *See, e.g.*, R. Docs. 111, 140, 216, 233, 243, and 246. Many of these filings contain detailed references to the record, exhibits, and arguments that demonstrate Casby's ability to appreciate the facts and circumstances of his case. Moreover, before sentencing, this Court ordered Casby undergo a competency examination – he was found competent. R. Docs. 275, 289. To the extent any medication should have been provided, any failure had no effect on his competency to stand trial. *See also* R. Doc. 381 at 2 ("Also, the letters that I have received over the period of time from Mr. Casby, there's no question that he's competent to understand the charges against him. He has the facilities for researching matters. He has written letters which are semi briefs in support of his position, so he understands the nature of the charges against him and he is able to assist his counsel.").

In his third claim, Casby argues that his federal prosecution violated the Double Jeopardy Clause. As mentioned earlier, Casby was prosecuted first by the State of Louisiana for second degree murder and later by the federal government for arson resulting in personal injury and death in violation of 18 U.S.C. 844(i). Under the law as it exists today, the Double Jeopardy Clause does not prohibit successive prosecutions by a state and federal government – "two prosecutions … are not for the same offense if brought by different sovereigns – even when those actions target the identical criminal conduct through equivalent criminal laws." *Puerto Rico v. Sanchez Valle*, 136 S. Ct. 1863, 1870, 195 L. Ed. 2d 179 (2016). "[W]hen the same act transgresses the laws of two sovereigns, it cannot be truly averred that the offender has been twice punished for the same offence; but only that by one act he has committed two offences." *Heath v. Alabama*, 474 U.S. 82, 88 (1985) (internal quotation marks omitted). "The Double Jeopardy Clause thus drops out of the picture when the entities that seek successively to prosecute a defendant for the same course of conduct [are] separate sovereigns." *Sanchez Valle*, 136 S. Ct. at 1870 (internal quotation marks omitted).

The Double Jeopardy landscape, however, may be impacted by the Supreme Court's resolution of *Gamble v. United States*, --- U.S. ---, 138 S. Ct. 2707 (2018). *Gamble* presents the question of "Whether the Court should overrule the 'separate sovereigns' exception to the Double Jeopardy Clause." *Id.*, Petition for Writ of Certiorari. Recognizing its potential relevance, Casby filed a motion asking the Court to hold his third claim in abeyance pending the outcome of *Gamble*. The Court agrees that the appropriate procedure is to defer ruling on this claim until the Supreme Court has ruled.

V. CONCLUSION

Casby has not demonstrated ineffective assistance of counsel or the cause and actual prejudice necessary to pursue matters more appropriate for appellate review. Because the record is adequate to dispose fully and fairly his claims, neither discovery nor an evidentiary hearing is necessary. Accordingly,

**IT IS ORDERED** that Defendant Cyrus Casby's Motion to Vacate (R. Doc. 388) and Motion for Evidentiary Hearing (R. Doc. 394) are hereby **DENIED** as to all claims besides claim three.

**IT IS FURTHER ORDERED** that the Court will defer ruling on Casby's third claim pending the outcome of *Gamble v. United States*.

New Orleans, Louisiana this 14th day of December, 2018.

_____
UNITED STATES DISTRICT JUDGE